IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |  |
|---|---|---|
| JEANNETTE THE COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 319-042 |
| | ) | |
| ANDREW M. SAUL, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff appeals the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.     BACKGROUND**

Plaintiff applied for DIB in July 2013, alleging a disability onset date of May 22, 2011. Tr. ("R."), pp. 10, 287-88. Plaintiff last met the insured status requirements of the Social Security Act for DIB on June 30, 2014. R. 13, 299. Plaintiff was sixty-two years old on her alleged disability onset date and was sixty-seven years old at the time the Administrative Law Judge ("ALJ") issued the first unfavorable decision, dated December 22, 2015, on her

application under consideration. R. 81, 128-41, 331. Plaintiff completed high school, and prior to her alleged disability date, had accrued a work history of over thirty years as a school lunchroom manager. R. 334, 342-43.

Plaintiff initially applied for benefits due to: diabetes, high blood pressure, nerve problems, tingling toes, arthritis in left leg up to hip, trouble walking, and memory loss. R. 342, 372. At the first administrative hearing before the ALJ, held November 17, 2015, counsel also raised problems with Plaintiff's right eye and a fistula. R. 79-80, 87-89, 105. After the ALJ issued his unfavorable decision on December 22nd, counsel's brief requesting the Appeals Council ("AC") review the decision also alleged Plaintiff was disabled due to: osteoarthritis, lumbago with left lower extremity, radiculopathy, diabetes, hypertension, hypothyroidism, insomnia, anxiety, depression, cataract, eye vision issues, and obesity. R. 404. The AC vacated the December 22, 2015 decision, which found Plaintiff had the Residual Functional Capacity ("RFC") for medium work and therefore could perform her past relevant work as a food service supervisor, and remanded the case to the ALJ for further consideration of the severity of Plaintiff's mental impairments of anxiety and depression, as well as obesity, and for further consideration of Plaintiff's RFC. R. 144-45.

On remand, the ALJ held a second hearing on November 28, 2017, and heard testimony from Plaintiff, who was represented by counsel, as well as from Vocational Expert ("VE") Tina Baker-Ivy. R. 32-75. At the November 28th hearing, the ALJ specifically requested counsel provide a post-hearing brief "to indicate what all severe impairments you believe exist prior to December, oh excuse me, June 30th of 2014." R. 36; see also R. 74-75 (explaining counsel's arguments regarding eyesight problems, fistula, and dizziness should be included in post-hearing brief so ALJ can "take a look at it more closely"). Counsel's

2

post-hearing brief alleged Plaintiff was disabled due to: osteoarthritis, crying small vessel ischemic disease, congenital spondylolistehesis, arteriovenous fistula, cerebral aneurysm, colonic polyps, lumbago with left lower extremity, radiculopathy, diabetes, hypertension, hypothyroidism, insomnia, anxiety, depression, cataract, eye vision issues, and obesity. R. 413-16.

In a second opinion, dated May 21, 2018, the ALJ again determined Plaintiff, then sixty-nine years old, was not disabled. R. 7-28. Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since her alleged onset date of May 22, 2011, through her date last insured ("DLI") of June 30, 2014 (C.F.R. § 404.1571 *et seq.*).

2. Through the DLI, claimant had the following severe impairments: osteoarthritis, lumbago with left lower extremity radiculopathy, degenerative disc disease and spondylosis of the lumbar spine, and obesity (20 C.F.R. § 404.1520(c)).

3. Through the DLI, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, and 404.1526).

4. Through the DLI, the claimant had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b)[1] except that she had the following additional

---

[1] "Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

3

>limitations: she could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; she could sit for 6 or more hours in [an] 8-hour workday; she could stand and walk for 6 hours in [an] 8-hour workday. Through the DLI, the claimant was capable of performing past relevant work as a food-service supervisor. This work did not require the performance of work-related activities precluded by the claimant's RFC (20 C.F.R. § 404.1565).

R. 13-21.

Because the ALJ determined Plaintiff could perform her past relevant work, the sequential evaluation process stopped, and the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from May 22, 2011, the alleged onset date, through June 30, 2014, the DLI. R. 21. When the AC denied Plaintiff's request for review of the ALJ's second decision, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ improperly (1) failed to find the existence of multiple severe impairments at step two and failed to consider Plaintiff's impairments related to her brain and cerebral aneurysm at all, (2) failed to review the entire medical record as a whole when formulating the RFC that did not account for Plaintiff's non-exertional limitations, and (3) failed to consider the "Lifetime Commitment to Field of Work Exception." See Pl.'s Br., doc. no. 14. The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See doc. no. 17 ("Comm'r's Br.").

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439

4

(11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether

5

correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

The case should be remanded because the ALJ, despite specifically requesting a post-hearing brief addressing Plaintiff's alleged impairments, failed to adequately consider all of Plaintiff's severe and non-severe medically determinable impairments at step two, an error which carried over to the formulation of an RFC at step four.

### A. Step Two Analysis for Severe Impairments

A severe impairment is one that significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." Id. § 404.1522(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects her ability to perform basic work activities. See

McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). However, the severity test at step two of the sequential process is designed to screen out only groundless claims. Tuggerson-Brown v. Commissioner of Soc. Sec., 572 F. App'x 949, 950 (11th Cir. 2014). The severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton v. Bowen, 827 F.2d 1447, 1452 & n.9 (11th Cir. 1987) (citation omitted). In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (citing Brady, 724 F.2d 914). Under this test, "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Id.

As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild." Id. Nevertheless, a medical diagnosis does not automatically equate to the existence of a "severe" impairment. Rather, functional limitations attendant to a diagnosis, not the mere existence of an impairment, guide the administrative analysis. See Moore, 405 F.3d at 1213 n.6 ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."); see also Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005) (*per curiam*). Moreover, "[w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the

7

outcome of a claim." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996). That is, in combination with other limitations, a "not severe" impairment may prevent the return to past relevant work or narrow the range of other work that may still be available to a claimant. Id.

### B.      Step Four of Sequential Evaluation Process

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)). When determining a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

### C.     Remand Is Warranted Because the ALJ Specifically Asked for a Post-Hearing Brief on Plaintiff's Alleged Severe and Non-Severe Impairments But Then Failed to Consider All of the Conditions Raised

Plaintiff argues the ALJ erred in failing to consider Plaintiff's brain or mental health impairments as severe, and points out, "[i]n fact, the ALJ in his analysis does not consider [Plaintiff's] impairments related to her brain and cerebral aneurysm at all." Pl.'s Br., p. 9. According to Plaintiff, she has had continued problems with her sight and balance because of her brain/balance issues documented throughout the record - but ignored by the ALJ - and those impairments have developed and worsened over time. Id. at 9-12. The Commissioner counters this argument forms no basis for remand because the ALJ found some severe impairments and proceeded to the other steps of the sequential process, and in any event, "Plaintiff failed to prove her impairments, whether severe or not severe, by whatever name or diagnosis, caused greater limitations on her ability to work prior to her" DLI. Comm'r's Br., pp. 6-7. The Commissioner also argues that because Plaintiff did not allege disability based on a cerebral aneurysm at the hearing level, the ALJ had no obligation to discuss or consider it. Id. at 7.

As the Commissioner points out, (id. at 8-9), and as was evidenced during the 2015 and 2017 administrative hearings, (R. 36, 74-75, 105), there is an issue about whether Plaintiff's brain issues arose prior to her DLI of June 30, 2014.[2] However, there is no issue Plaintiff testified at the hearing about a fistula behind her eye that blurred her vision and caused her dizziness and to be "off balance." R. 43. Nor is there any dispute Plaintiff was diagnosed with a cerebral aneurysm/fistula and had test results memorializing an impression of crying small vessel ischemic disease within the months just following Plaintiff's DLI. See, e.g., R. 1009-10; see also

---

[2]Plaintiff had to prove she was disabled on or before June 30, 2014, to receive DIB. See Moore, 405 F.3d at 1211.

9

Pl.'s Br., pp. 9-12 (citing e.g., Exs. 11F, 17F, 18F, 20F).  When Plaintiff presented to M. Todd Peacock, M.D., on September 3, 2014, she reported pain in her right eye for several months.  R. 1078.  By December 2014, under the care of Arthur A. Gregorian, M.D., Plaintiff had surgery for an arteriovenous fistula, and the procedure was described as "six vessel diagnostic angiogram, flow diversion of the right internal carotid artery with two pipeline embolization devises, embolization of AV fistula with Onyx."[3]  R. 639.  The discharge summary showed quick improvement after the procedure, "particularly in her balance."  R. 640.  Plaintiff's post-hearing brief clearly alleged disability based on, *inter alia*, an arteriovenous fistula and cerebral aneurysm.  R. 413.

An ALJ must consider all of a claimant's impairments, severe and non-severe, in combination.  Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (citing Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984)); see also Robinson v. Astrue, 365 F. App'x 993, 995 (11th Cir. 2010) (*per curiam*) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)) (requiring administrative decision showing a claimant's medical condition was considered as a whole); 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment.  We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.").  Here, Plaintiff testified about the fistula at the 2015 and 2017 administrative hearings and the ALJ specifically asked for a brief about all of Plaintiff's medical impairments after the 2017 hearing so that he could consider them

---

[3]As succinctly summarized in Plaintiff's brief, "In layman's terms, Plaintiff had pooling of blood behind her brain which had to be relieved.  She then had a stent placed in an effort to prevent further blood from pooling and to relieve pressure around her eyes."  Pl.'s Br., p. 12.

closely. R. 74-75. Yet, the ALJ failed to acknowledge, or provide any analysis of, Plaintiff's brain and cerebral aneurysm issues, impairments that resulted in surgical intervention within just months of Plaintiff's DLI.[4] Even if the impairments were to be considered non-severe at step two, the remainder of the ALJ's decision does not evidence any consideration of these conditions as part of the entirety of Plaintiff's medical's condition that must be considered when formulating the RFC at step four. The Court cannot agree substantial evidence supports the ALJ's decision when the ALJ specifically asked for certain information, then failed to discuss it - either to analyze it as part of Plaintiff's RFC or explain why the information is not relevant to the RFC determination.

The Commissioner's attempt at a post-hoc explanation of why the omitted consideration of all of Plaintiff's impairments was warranted, or does not otherwise change the disability determination, cannot excuse the error because the Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered. Mills v. Astrue, 226 F. App'x 926, 931-32 (11th Cir. 2007) (acknowledging evidence in the record not mentioned by the ALJ may support administrative decision but concluding that court could not "say the error was harmless without re-weighing the evidence," which would require "conjecture that invades the province of the ALJ"); see also Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]").

---

[4]The Eleventh Circuit recognizes treatment received after the relevant determination date may be chronologically relevant. Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1322-23 (11th Cir. 2015) (citing Boyd v. Heckler, 704 F.2d 1207, 1211 (11th Cir. 1983)).

The Court offers no opinion on what a complete and accurate review of the administrative record might conclude on Plaintiff's disability application, but the Court cannot conclude that the decision as reported by the ALJ is supported by substantial evidence. As such, remand is warranted. The Court need not reach Plaintiff's remaining contention concerning the analysis of her alleged mental health impairment. Cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert testimony alone warrants reversal,' we do not consider the appellant's other claims.")

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 29th day of June, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA